# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL W. McALEE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 11-00156 |
| INDEPENDENCE BLUE CROSS, | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                  June 27, 2011

Presently before the Court is the Motion of Defendant Independence Blue Cross to Dismiss Count II of the Complaint of Plaintiff Daniel W. McAlee pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This action centers upon alleged employment discrimination by Defendant Independence Blue Cross against Plaintiff Daniel McAlee on the basis of his military service in the U.S. Army Reserves. According to the facts set forth in the Complaint, Plaintiff began working for Defendant as an entry-level associate in the Self-Funded Billing group of the Accounting and Finance Department in approximately January of 2009. (Compl. ¶ 12.) While working in Self-Funded Billing, Plaintiff received pay raises, promotions, and other benefits due to good work performance and length of employment. (Id. ¶ 13.) Based on this positive performance, he eventually attained a position as a Level III Senior Financial Analyst. (Id.)

In early March, 2008, Plaintiff notified Defendant that he had received orders to report to active duty with the Reserves on April 12, 2008. (Id. ¶ 14.) His last day of work was on or about April 10. (Id. ¶ 15.) On or about April 12, Plaintiff reported for pre-mobilization training with his Army Reserve Unit in Fort Dix, New Jersey. (Id. ¶¶ 15-16.) He departed for Kuwait en route to Iraq on June 12, 2008. (Id. ¶ 17.) On approximately June 15, 2009, Plaintiff was released from active duty with an "honorable" character of service. (Id. ¶ 18.) Upon his return to work in early July, 2009, Plaintiff met with Mr. Brian McGroarty, whom Defendant had hired as a supervisor in Self-Funded Billing approximately one month before Plaintiff left for pre-mobilization training. (Id. ¶ 19.) At this meeting, Plaintiff and McGroarty discussed job-related expectations and responsibilities, and new policies and procedures. (Id. ¶ 20.)

According to Plaintiff, although his title, pay, and benefits remained the same as before he went on active duty, his duties and responsibilities changed significantly upon his return. (Id. ¶ 22.) Prior to his leave for active duty, "approximately two-thirds of his job responsibilities included data analysis, consistent with his duties as a senior-level analyst." (Id. ¶ 23.) Such duties included "compiling, summarizing, and distributing customer data for nine (9) associate analysts in the department, reconciliation against the company's General Ledger, and attending higher-level meetings." (Id.) When he returned to work, his role was downgraded to entry-level billing duties; he was assigned more accounts, but with no data responsibilities. (Id. ¶ 24.)

In late September or early October of 2009, Mr. McGroarty informed Plaintiff that if he made one more error in his work, he would be placed on probation and on the company's Corrective Action Plan for six months. (Id. ¶ 25.) Pursuant to new department policy instituted by McGroarty while Plaintiff was overseas, employees were placed on the Corrective Action

2

Plan if they exceeded their number of allowable errors – twelve per year for Level III Senior Financial Analysts and twenty-four per year for Level II Analysts. (Id. ¶ 26.) Mr. McGroarty informed Plaintiff that he had prorated Plaintiff's number of allowable errors. (Id.)

In late November or early December of 2009, Plaintiff was placed on the Corrective Action Plan for exceeding his number of allowable errors on work he submitted to Mr. McGroarty. (Id. ¶ 27.) The Plan required Plaintiff to meet with McGroarty weekly to discuss his progress. (Id. ¶ 28.) On or about March 2, 2010, Plaintiff met with Mr. McGroarty and Mr. Harold Hunter, the manager of Self-Funded Billing, for his shortened annual review, covering Plaintiff's employment from July 2009 to December 2009. (Id. ¶ 30.) During the review, Mr. Hunter gave Plaintiff a rating of "Progressing," which was one step below "At Expectations." (Id. ¶ 31.) Plaintiff avers that this was his first review below "At Expectations" in his eleven years with the company. (Id. ¶ 32.) He alleges that his review was a "direct and proximate result of the internal department policies" Mr. McGroarty instituted while Plaintiff was serving overseas, and that McGroarty's error system was "arbitrary and subjective." (Id. ¶¶ 33-34.) According to Plaintiff, he often "did not know what conduct would lead to a reprimand and what conduct was permitted," and his alleged errors were "sometimes generated by glitches in Defendant's databases and 'semi-automated' systems." (Id. ¶¶ 34-35.) He asserts that it was "not reasonable for McGroarty to assess Plaintiff's skills after supervising him for only a short period of time when Plaintiff was handling only basic billing responsibilities and no Senior-level data analysis." (Id. ¶ 36.) Similarly, he avers that his manager, Mr. Hunter, "had limited dealings with Plaintiff and did not have day-to-day knowledge of Plaintiff's job duties and performance." (Id. ¶ 37.)

On or about March 30, 2010, Plaintiff "awoke with cold-and-flu-like symptoms and called McGroarty's extension." (Id. ¶ 38.) When Mr. McGroarty and Mr. Hunter returned Plaintiff's call, they informed him he was being terminated. (Id. ¶ 39.) Plaintiff alleges that Defendant's new and arbitrary discipline and termination policies discriminated against him on the basis of his military service. (Id. ¶¶ 40-55.) He further alleges that Defendant improperly failed to re-employ him at an equivalent position upon his return from leave, and that he was terminated without good cause. (Id.) On January 10, 2011, he commenced the present action, alleging violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 - 4333 (Count I), and wrongful discharge in tortious violation of public policy pursuant to the Pennsylvania Military Affairs Act, 51 Pa. C.S.A. §§ 7301 et seq. (Count II). Defendant moved to dismiss Count II on March 14, 2011, and Plaintiff filed a Response on April 4, 2011. The Court now considers Defendant's Motion.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Federal Rule of Civil Procedure 8 does not call for detailed factual allegations; rather, it requires a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

The Supreme Court has made clear, however, that "[t]hreadbare recitals of the elements

4

of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Instead, the plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. To do so, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556-57); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (adopting Iqbal's standards).

## III. DISCUSSION

**Whether Plaintiff has Stated a Valid Claim for Tortious Interference with Public Policy**

Under Pennsylvania law, employers may terminate at-will employees with or without cause. Hicks v. Arthur, 843 F. Supp. 949, 956 (E.D. Pa. 1994) (citing Freeman v. McKellar, 795 F. Supp. 733, 741 (E.D. Pa. 1992); Paralegal v. Lawyer, 783 F. Supp. 230, 230 (E.D. Pa. 1992); Paul v. Lankenau Hosp., 569 A.2d 346, 348 (Pa. 1990)). An exception exists, however, when an employee has been terminated in violation of a "significant, clearly mandated public policy." Id. at 957 (citing Brown v. St. Luke's Hosp., 816 F. Supp. 342, 344 (E.D. Pa. 1993); Freeman, 795 F. Supp. at 741); see also Geary v. United States Steel Corp., 319 A.2d 174 (Pa. 1974). In Count II, Plaintiff alleges that Defendant violated a "clear and specific public policy of the Commonwealth of Pennsylvania by wrongfully discharging Plaintiff" on the basis of his military service, as prohibited by the Pennsylvania Military Affairs Act ("PMAA"). (Compl. ¶ 54.)[1]

---

[1] The PMAA provides:

It is unlawful . . . for any private employer to refuse to hire or employ any individual not on extended active duty because of his membership in the National Guard or any one of

5

Defendant argues that Plaintiff cannot bring a claim for wrongful discharge under this exception to the at-will doctrine because (1) he has an existing statutory remedy under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and (2) USERRA prevents his employment from being classified as "at-will."

Pennsylvania courts have agreed that "the public policy against adverse employment actions as canonized in the PMAA is 'an important public policy' which is 'clear and specific.'" Hamovitz v. Santa Barbara Applied Research, Inc., No. CIV.A.07-0454, 2010 WL 4117270, at *6 (W.D. Pa. Oct. 19, 2010) (quoting Tukesbrey v. Midwest Transit, Inc., 822 F. Supp. 1192, 1201 (W.D. Pa. 1993)). However, "a cause of action for wrongful discharge may be maintained only in the absence of a statutory remedy for an aggrieved employee." Cruz v. Pennridge Reg'l Police Dept., No. CIV.A.02-4372, 2003 WL 21742015, at *8 (E.D. Pa. July 29, 2003); see also Wolk v. Saks Fifth Ave., Inc., 728 F.2d 221, 222-23 (3d Cir. 1984); Holmes v. Pizza Hut of Am., Inc., No. CIV.A.97-4967, 1998 WL 564433, at *8 (E.D. Pa. Aug. 31, 1998) ("The 'only Pennsylvania cases applying public policy exceptions have done so where no statutory remedies were available.'") (quoting Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 919 (3d Cir. 1982)).

Plaintiff, citing Hamovitz, supra, argues that, although he is pursuing statutory relief under USERRA, the Court should permit his wrongful discharge claim to proceed because USERRA does not preempt state law causes of action. (Pl.'s Resp. Opp'n 3-5.) Indeed, section

---

the other reserve components of the armed forces of the United States . . . or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment because of such membership . . . .

51 PA. CONS. STAT. ANN. § 7309(a).

4302(a) states:

> Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.

38 U.S.C. § 4302(a). Unlike the court in Hamovitz, however, this Court sees the determinative issue at hand not to be the preemptive intent of USERRA, but whether Pennsylvania common law precludes Plaintiff from bringing a public policy claim when USERRA offers its own remedy. See Schmauch v. Honda of Am. Mfg., Inc., 311 F. Supp. 2d 631, 636 (S.D. Ohio 2003) ("[T]he issues of preemption and whether a statute provides adequate remedies to protect public policy are generally not the same.").[2]

---

[2] This is not to say that an analysis limited solely to legislative intent would not be proper in other jurisdictions. See, e.g., Slater v. Verizon Commc'ns, Inc., No. CIV.A.04-303, 2005 WL 488676, at *4 (D.N.H. Mar. 3, 2005) ("The New Hampshire Supreme Court has explained . . . that a plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action . . . . But there appears to be no reported decision by the New Hampshire Supreme Court in which a plaintiff's common law wrongful discharge claim has been dismissed due to the existence of an adequate statutory remedy.") (internal citations and quotations omitted). In contrast to these other jurisdictions, the jurisprudence underlying Pennsylvania's public policy exception emphasizes the availability of a statutory remedy rather than legislative intent. See, e.g., Murphy v. Se. Pa. Transp. Auth., No. CIV.A.93-3213, 1993 WL 313133, at *3 (E.D. Pa. Aug. 9, 1993) ("Since the first case in which the Pennsylvania Supreme Court announced the public policy cause of action as an exception to the otherwise strict common law adherence to the at will employment doctrine, the Court has noted it would be applied only in the absence of a statutory or contractual provision.") (citing Geary, 319 A.2d at 176).

The Court notes, however, that many Third Circuit decisions finding the public policy exception inapplicable to plaintiffs with a statutory remedy did so where the plaintiff brought a claim under the Pennsylvania Human Relations Act ("PHRA"). Those opinions relied, in part, on the exclusive language of the PHRA, and the importance of not allowing plaintiffs to circumvent the statute's "carefully drafted legislative procedures." See, e.g., Wolk, 728 F.2d at 223 (finding that, "if the PHRA were invoked its remedies would be exclusive"). As Plaintiff argues, USERRA demands no such exclusivity. Nevertheless, without more explicit direction from the Third Circuit or the Pennsylvania Supreme Court, this Court chooses to analyze the

In creating the public policy exception to the at-will doctrine, the Pennsylvania Supreme Court aimed "to provide a remedy for employees with no other recourse against wrongful discharge." Phillips v. Babcock & Wilcox, 503 A.2d 36, 37 (Pa. Super. 1986). Here, Plaintiff's membership in the U.S. Army Reserves entitled him to statutory protection against termination without just cause for a designated period of time. See 38 U.S.C. § 4316(c)(1) ("A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause . . . within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days."). These provisions "temporarily change[] the at-will employment status of returning veterans," Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006), and protect Plaintiff from discriminatory termination on the basis of his membership in the military reserves.[3] As such, the Court finds that Plaintiff does not fall within the class of employees the Pennsylvania Supreme Court aimed to protect in creating the public policy exception. Given that he is "[a]ble to pursue [his] rights

---

scope of the public policy exception via its underlying purpose and the adequacy of Plaintiff's statutory remedies – not just the text and intent of the federal statute at issue.

[3] The Third Circuit has stated that the purpose of USERRA is to:

> (1) encourag[e] 'noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;' (2) minimiz[e] 'the disruption to the lives of persons performing service in the uniformed services as well as to their employers' by providing for the prompt reemployment of service members upon their completion of service; and (3) prohibit[] discrimination against them because of their uniformed services. 38 U.S.C. § 4301(a)(1)-(3). In line with these purposes, USERRA's remedial provisions are designed to prevent, and to compensate a service member for, employment discrimination based on military status.

Gordon v. Wawa, Inc., 388 F.3d 78, 84-85 (3d Cir. 2004) (citing 38 U.S.C. §§ 4323(d)-(e), (h)).

under statute, [P]laintiff may not appeal to the common law as an additional means of policy implementation." Kinnally v. Bell of Pa., 748 F. Supp. 1136, 1146 (E.D. Pa. 1990) (citing Bruffett, 692 F.2d at 917-19).

Plaintiff also argues, again based on Hamovitz, that USERRA's remedies are not exclusive because the statute does not provide for emotional or punitive damages. (Pl.'s Resp. Opp'n 3-4 (citing Hamovitz, 2010 WL 4117270, at *7-8).) He offers no authority, however, suggesting that a statute must provide every possible form of relief in order to preclude a plaintiff from bringing a common law wrongful discharge claim. To the contrary, the Court finds that USERRA adequately protects Plaintiff's interest in being free from discriminatory discharge.

Although USERRA does not offer punitive or emotional damages, the statute does provide for the recovery of lost wages or benefits, 38 U.S.C. § 4323(d)(1)(B), liquidated damages equal to the wages or benefits lost if the violation was willful, id. § 4323(d)(1)(C), equitable remedies, id. § 4323(e), and attorney fees. Id. § 4323(h). The Third Circuit has yet to address the adequacy of USERRA's remedies in this context, and few federal courts within Pennsylvania have considered the issue. At least one court, however, has noted that the public policy exception to Pennsylvania's at-will doctrine does not apply to plaintiffs bringing a USERRA claim, because USERRA "provides for its own statutory remedy, which includes damages and equitable relief." Gannon v. Nat'l R.R. Passenger Corp., No. CIV.A.03-4501, 2004 WL 1175817 at *3 n.1 (E.D. Pa. May 27, 2004). Moreover, several courts in Ohio have found such remedies sufficient to both compensate plaintiffs and punish defendants, "even if [the statute] does not provide the 'full panoply of relief that would be available in a tort cause of action for wrongful discharge.'" Schmauch, 311 F. Supp. 2d at 636 (citing Wiles v. Medina Auto Parts, 773 N.E.2d

526, 534 (Ohio 2002). The Schmauch court, relying on Ohio law, dismissed the plaintiff's common law wrongful discharge claim on the basis that USERRA "provides adequate remedies such that the public policies established by the USERRA are not jeopardized by denying Schmauch the ability to pursue a tort action for a violation of public policy." Schmauch, 311 F. Supp. 2d at 635.[4]

In contrast, Hamovitz based its holding on "the rather plain language of USERRA" indicating Congress's intent not to "replace any common law remedy that might also be available to plaintiff." 2010 WL 4117270, at *7 (quoting Slater, 2005 WL 488676). As noted above, Slater's sole inquiry in determining the applicability of New Hampshire's public policy exception, as dictated by New Hampshire law, was whether Congress intended USERRA to replace common law claims – not whether the statute's remedial scheme adequately protected the interests of the plaintiff in being free from discriminatory discharge. Id. at *4. Indeed, Slater explicitly distinguished its holding from Schmauch based on the differences in Ohio and New Hampshire common law, stating that, "the determinative factor under New Hampshire law . . . is not whether USERRA provides an 'adequate remedy,' but rather, whether the legislature, in this case the U.S. Congress, intended to replace common law remedies, a question not addressed by the court in Schmauch . . . ." Id.

Moreover, courts in this district have found that Title VII's pre-Civil Rights Act remedial scheme, which failed to provide for punitive, liquidated, or emotional damages, see Lang v.

---

[4] To be clear, there is no consensus as to the adequacy of USERRA's remedies among courts outside this circuit. See, e.g., Patton v. Target Corp., No. CIV.A.03-1722, 2007 WL 894560, at *9-10 (D. Or. Mar. 21, 2007) (finding USERRA inadequate to compensate the "personal nature" of plaintiff's emotional harm).

10

Seiko Instruments U.S., Inc., No. CIV.A.96-5398, 1997 WL 11301, at *5 (E.D. Pa. Jan. 14, 1997), could potentially offer "complete redress" to aggrieved plaintiffs. Miller-Nuss v. Serv. Am. Corp., No. CIV.A.89-5416, 1990 WL 2801, at *2 (E.D. Pa. Jan. 16, 1990); accord Aiken v. Bucks Ass'n for Retarded Citizens, Inc., No. CIV.A.91-2672, 1991 WL 243537, at *5 (E.D. Pa. Nov. 15, 1991).

In light of the strict limitations on Pennsylvania's common law action for wrongful discharge in tortious violation of public policy and the availability of a remedy under USERRA, the Court finds that Plaintiff may not bring his common law claim. Accordingly, the Court dismisses Count II of Plaintiff's Complaint.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's claim for tortious violation of public policy (Count II) is granted.

An appropriate Order follows.